**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| BRIAN B.,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | HONORABLE KAREN M. WILLIAMS<br>Civil Action<br>No. 1:25-cv-17141 (KMW)<br>**MEMORANDUM OPINION AND ORDER** |

APPEARANCES:

**Alan H. Polonsky, Esq.**
Polonsky & Polonsky
512 S. White Horse Pike
Audobon, NJ 08106

*Counsel for Petitioner Brian B.*

**Shawn C. Carver, Special Assistant U.S. Attorney**
Social Security Administration
Office of Program Litigation, Office 3
6401 Security Boulevard
Baltimore, MD 21235

*Counsel for SSA Commissioner Frank Bisignano*

**WILLIAMS, District Judge:**

Presently before the Court is the Petition of Brian B.[1] ("Petitioner") seeking review of the final decision of the Commissioner of the U.S. Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g). The Court heard oral argument in connection with this appeal on October 9, 2026. Having considered the submissions of the parties and the arguments of counsel, the Court **AFFIRMS** the Commissioner's decision for the reasons that follow.

[1] Pursuant to this Court's Standing Order 2021-10, this Memorandum Opinion and Order will refer to Petitioner solely by first name and last initial.

## I. BACKGROUND

Petitioner filed an application for Disability Insurance Benefits on August 18, 2023, alleging disability beginning December 2, 2022. (A.R. 229-35.) The Social Security Administration denied the claim initially on March 20, 2024, and again upon reconsideration on July 30, 2024. (A.R. 103-112, 114-121.) Petitioner then requested a hearing before an Administrative Law Judge ("ALJ"). (A.R. 122-123.) The ALJ held a video hearing on February 25, 2025, at which Petitioner testified and was represented by counsel. (A.R. 46, 52-63.) An impartial vocational expert ("VE") also testified at the hearing. (A.R. 64-72.)

On March 13, 2025, the ALJ issued an unfavorable decision, concluding that Petitioner was not disabled within the meaning of the Social Security Act from December 2, 2022 through the date of the decision. (A.R. 25-39.) Petitioner appealed that decision to the Appeals Council, which denied review on September 18, 2025. (A.R. 1-3.) Petitioner timely appealed to this Court. (Compl., Dkt. No. 1.)

## II. DISCUSSION

The Court assumes familiarity with the record and the applicable standard of review and recounts herein only that information relevant to the Court's determination on this appeal.

On appeal, Petitioner alleges four errors by the ALJ. First, Petitioner contends that the ALJ rejected the opinions of two treating neuropsychologists, Dr. Lawler and Dr. Ledakis, as unpersuasive without an adequate explanation because the ALJ (a) failed to account for the supportability of these opinions and (b) failed to consider whether these opinions were consistent with the other medical evidence of record. Second, Petitioner asserts that the ALJ erred in finding that Petitioner's intellectual disability did not satisfy Listing 12.02. Third, Petitioner argues that he ALJ found unpersuasive the opinion of the consultative examiner, Dr. Lazarus, for erroneous

reasons, when his opinion was purportedly supported by his findings and consistent with the evidence from other medical sources. Finally, Petitioner contends that the residual functional capacity ("RFC") defined by the ALJ did not contain all of Petitioner's credibly established limitations – namely, an inability to remember and carry out simple instructions – and, moreover, that the jobs cited by the VE could not be performed with those limitations. With respect to this final point, Petitioner argues that the RFC included an ability to follow only "simple instructions," but the jobs identified by the ALJ at Step Five require a worker to follow more than simple instructions. The Commissioner responds that substantial evidence supports the ALJ's evaluation of the medical records and the formulation of the RFC. The Court addresses each argument in turn.

**A. The ALJ properly discounted the medical opinions in the record**

The gravamen of Petitioner's argument is that the evidence of record, including several medical source opinions and the opinions of non-medical sources, consistently reflect functional limitations resulting from Petitioner's persistent difficulty remembering information, yet the ALJ erroneously substituted her judgment for the opinions of experts and determined that Petitioner was able to work. As set forth below, the Court agrees with Petitioner that the medical source statements are consistent with each other. However, the functional limitations identified by the providers in these medical source statements are not consistent with and supported by the providers' treatment notes, test results, and other evidence of record. Furthermore, the functional limitations do not account for the strategies Petitioner utilizes to compensate for his memory impairment, which he learned through cognitive therapy sessions specifically designed to rectify problems resulting from his memory issues.

The ALJ's consideration of medical opinion evidence is governed by regulations which focus on the persuasiveness of each medical opinion. 20 C.F.R. § 416.920c(a). The regulations list

the factors to be utilized in considering medical opinions: supportability, consistency, treatment relationship including the length and purpose of the treatment and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program. 20 C.F.R. § 416.920c(c). The regulations require the ALJ "to explain only two of these factors: whether medical opinions were (1) based on 'objective medical evidence and supporting explanations' and (2) consistent with other medical opinions in the record." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024)(quoting 20 C.F.R. § 404.1520c(c)). The ALJ need not specifically use the magic words "supportability" and "consistency" when evaluating a medical opinion. *Id.* at 640.

When faced with conflicting opinion evidence, an ALJ has significant discretion in choosing whom to credit. *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) ("[T]he ALJ is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences.") (internal citation and quotation omitted). However, when presented with conflicting evidence, the ALJ "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (internal citation and quotation omitted); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."). The ALJ's factual findings do not need to follow a particular format so long as "there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

**1. Supportability**

Petitioner asserts that the ALJ failed to comply with the regulations, which required her to consider the supporting explanations for Dr. Lawler's and Dr. Ledakis' opinions. However, the

ALJ expressly considered the evidence of record when rejecting both doctors' medical source statements and found that Dr. Lawler's and Dr. Ledakis' opinions concerning Petitioner's functional limitations were not supported by these doctors' own examination findings and the testing results reflected in the record. (A.R. 36.)

For example, in a December 8, 2022 Medical Source Statement, Dr. Lawler concluded that Petitioner is "unable to meet competitive standards" for any of the cognitive abilities "needed to perform skilled, professional work duties" identified on the form. (A.R. 866.) In a January 26, 2025 Medical Opinion, Dr. Lawler opined that Petitioner has "extreme" limitations in an ability to remember work-like procedures and an ability to understand and remember very short and simple instructions. (A.R. 862.) Dr. Lawler also found, *inter alia*, "marked" limitations in Petitioner's ability to carry out very short and simple instructions and ability to ask simple questions or request assistance. (*Id.*) In support of her December 2022 findings, Dr. Lawler noted that "[n]europsychological testing (11/03/2022) documented significant memory impairment, with rapid forgetting of new information." (A.R. 867.) In support of her January 2025 findings, Dr. Lawler noted that "[n]europsychological testing (11/03/2022) documents significant and rapid forgetting of new information over a short time frame (within minutes)" and that "[t]his impairment makes it impossible for him to be gainfully employed in any capacity." (A.R. 862.) Petitioner argues that the ALJ failed to consider the supportability of Dr. Lawler's opinions. However, Dr. Lawler's explanations on the December 2022 and January 2025 forms make clear that her assessment was based on the testing she conducted in November 2022, and the ALJ expressly considered these test results when evaluating Dr. Lawler's opinions. (A.R. 35.) The ALJ specifically noted Dr. Lawler's test results "support[] finding some limitations, but they do not support the marked to extreme limitations noted by Dr. Lawler in her check-box and fill-in-the-

blank opinions." (*Id.*) The ALJ also considered Dr. Lawler's treatment notes, which indicated that Petitioner had "an average immediate recall, low average subsequent recall, low average free recall, very superior immediate recall and high average learning and memory for visual materials, intact language functioning, high average executive functioning, very superior intellectual functioning [and] high average word reading abilities." (*Id.*) Accordingly, the ALJ expressly concluded that Dr. Lawler's opinion concerning the extent of Petitioner's functional limitations was not supported by Dr. Lawler's own treatment notes and test results. The Court thus finds that the ALJ did not err by failing to consider the supportability of Dr. Lawler's opinion.

With respect to Dr. Ledakis, he opined in an April 4, 2024 Medical Source Statement that Petitioner is unable to perform and/or unable to meet competitive standards in most areas of cognitive abilities "needed to perform skilled, professional work duties," including an inability to frequently utilize short instruction memory, an inability to frequently maintain regular attendance, and an inability to frequently understand, remember and carry out short and detailed instructions. (A.R. 884.) Dr. Ledakis noted on the form that his opinion was supported by his neuropsychological evaluation of Petitioner from February 21, 2024. (A.R. 885.) The ALJ reviewed the testing performed by Dr. Ledakis in February 2024 and explicitly noted Dr. Ledakis' findings that Petitioner "had a superior range of intellectual functioning, a mild relative weakness in executive functioning, . . . had relatively intact visual memory, had an impairment in verbal memory, and his memory impairment was particularly evident after longer delays." (A.R. 36.) While acknowledging Dr. Ledakis' finding concerning Petitioner's memory impairment, the ALJ concluded that such impairment "does not support finding he is unable to perform in most areas of mental functioning," particularly in light of Petitioner's "generally normal mental examinations except for the memory impairment," his superior intelligence, and his ability to engage in activities

of daily living. (*Id.*) The ALJ thus considered the supportability of Dr. Ledakis' medical source statement but found it was not supported by the evidence of record. As such, the ALJ did not err by failing to consider the supportability of Dr. Ledakis' opinion.

**2. Consistency**

The ALJ also properly considered the consistency of Dr. Lawler's and Dr. Ledakis' opinions with the broader record. After reviewing the record in its entirety, the ALJ concluded that the record supported Petitioner's assertion that he has memory impairments that limit his ability to work, but the evidence did not support his contention that his impairments prevented him from working at all. (A.R. 34, 37.)

First, the medical source opinions are based on Petitioner's "rapid forgetting of information," but they do not account for the strategies that Petitioner employs to mitigate the functional limitations of his memory impairment.[2] The ALJ explicitly noted the records of Petitioner's cognitive therapy, which allowed Petitioner "to develop compensatory strategies to compensate for his memory problems." (A.R. 37.) The record demonstrates that Petitioner utilizes strategies such as setting alarms and reminders on his smartphone and taking notes to compensate for his cognitive deficits. (A.R. 423, 628.) These strategies are noted by the ALJ to have helped Petitioner in his activities of daily living and have served to accommodate Petitioner's memory deficiencies. (A.R. 34, 37.) Because the functional limitations in Dr. Ledakis' and Dr. Lawler's

[2] Indeed, Dr. Lawler's opinions, as well as the opinion of Petitioner's cognitive therapist, Annie Bilinsky, are based on Petitioner's condition as of December 2022. (A.R. 862-63, 864-67, 878-81.) Subsequently, between January 2023 and March 2023, Petitioner attended twelve cognitive therapy sessions by which he learned to implement a variety of external and internal memory aids. (A.R. 421.) Petitioner was noted to have made "significant gains in his functional limitations" through the strategies developed in cognitive therapy. (*Id.*)

medical source statements do not account for these strategies, there is substantial evidence to support the ALJ's conclusion that these opinions are not consistent with the record in its entirety.

Moreover, the ALJ discussed the inconsistency between Dr. Ledakis' and Dr. Lawler's medical source statements and the other medical evidence of record. With respect to both doctors' opinions, the ALJ stated that Petitioner's "generally normal mental examinations except for some delayed memory deficiencies are not consistent with" Dr. Lawler's and Dr. Ledakis' opinions.[3] (A.R. 35, 36.) Likewise, the ALJ discussed the inconsistency between these providers' opinions and the non-medical evidence of Petitioner's ability to engage in activities of daily living. (*Id.*) The ALJ specifically noted in her decision that Petitioner, *inter alia*, does not need reminders to take care of his personal needs, drives, manages his own healthcare appointments, shops for necessities, prepares simple meals, and participates in social activities such as volunteer work. (A.R. 32.) The ALJ concluded:

> The claimant has reported memory loss, difficulty concentrating, and difficulty completing tasks following the surgery. Mental examinations are somewhat consistent with the claimant's reported limitations. Testing has found generally intact short-term memory, but a limited delayed memory with concentration difficulties. The claimant attended therapy to develop compensatory strategies to compensate for his memory problems. Additionally, testing has also found he continues to have intact activities of daily living, very superior intellectual abilities, and average verbal fluency. Overall, the record is consistent with finding limitations that prevent the claimant from performing his past work, but it is not consistent with the limitations alleged by the claimant.

---

[3] At oral argument, Petitioner's counsel noted that the ALJ did not expressly indicate that she considered the consistency between Dr. Lawler's and Dr. Ledakis' opinions. "A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."). The ALJ's decision makes clear that she considered the consistency between the medical opinions, as well as their consistency with the other evidence of record. (A.R. 35, 36.)

(A.R. 37.) By identifying specific evidence from the record that contradicted Dr. Lawler's and Dr. Ledakis' medical source statements, the Court finds that the ALJ sufficiently articulated the consistency factor.

In summary, the Court rejects Petitioner's argument that the ALJ rejected the opinions of Dr. Lawler and Dr. Ledakis for erroneous reasons. Despite Petitioner's assertion that the ALJ failed to address the supportability and consistency of these providers' opinions, the ALJ explicitly addressed both of these factors. The ALJ identified inconsistencies with the record and made findings that were consistent with the treatment notes and test results of these providers. The Court concludes that the ALJ's analysis is supported by substantial evidence.

**B. The ALJ's finding that Petitioner does not satisfy the criteria of Listing 12.02 is supported by substantial evidence**

To satisfy the requirements of the Listing, Petitioner was required to demonstrate an extreme limitation of one, or marked limitation of two, areas of adaptive functioning. Listing 12.02(B). The regulations require the ALJ to evaluate limitations based on a five-point scale from "no limitation" to an "extreme limitation." Listing 12.00F2. Relevant here, the SSA defines *moderate limitation* as a "fair" ability to function in a particular area independently, appropriately, effectively, and on a sustained basis, and a *marked limitation* as a "seriously limited" ability to function in such area. Listing 12.00F2(c)-(d).

The ALJ found as follows with respect to the Paragraph B criteria:

- Understanding, remembering or applying information: Petitioner has a *moderate* limitation.
- Concentrating, persisting or maintaining pace: Petitioner has a *moderate* limitation.
- Interacting with others: Petitioner has a *mild* limitation.
- Adapting or managing oneself: Petitioner has a *mild* limitation.

(A.R. 32.)

Petitioner contends that the ALJ erred because she should have concluded that Petitioner has marked limitations, rather than moderate limitations, in the first two categories. Petitioner relies solely on Dr. Lawler's medical source statements, arguing that "had Dr. Lawler's opinion been credited, the ALJ would have been compelled to find Plaintiff disabled" because "her findings support a conclusion that [Petitioner] has marked limitations in his ability to remember or carry out instructions as well as his ability to concentrate, persist or maintain pace." (Pl.'s Br. 6, Dkt. No. 7.) The Court, however, has already concluded that the ALJ's rejection of Dr. Lawler's medical source statements was appropriate, and Petitioner does not identify any other evidence of record to support a finding that he meets the criteria of Listing 12.02.[4] Therefore, the Court rejects any argument that the ALJ erred in her Step 3 finding that Petitioner did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

**C. Dr. Lazarus' opinion**

The ALJ found the opinion of the consultative examiner, Dr. Lazarus, to be "minimally persuasive" because Dr. Lazarus' findings were "generally normal." (A.R. 35.) The ALJ noted that "during the March 2024 consultative examination, the claimant had a coherent and logical thought process, was fully oriented, had moderately limited memory skills with 3 out of 3 items recalled immediately and 1 out of 3 recalled after a delay, had mildly compromised attention and concentration, and had average intellectual functioning. At that time, the claimant reported he used

---

[4] At oral argument, Petitioner argued that the Court should remand on this basis alone because the Commissioner failed to address it in the opposition brief. However, because Petitioner's argument concerning the Listing is that the ALJ improperly rejected Dr. Lawler's opinion, and the Commissioner addressed the ALJ's treatment of Dr. Lawler's opinion, the Court does not deem this argument waived.

compensatory strategies for things that require reminders and performs volunteer work." (A.R. 34.) The ALJ found that Dr. Lazarus' examination supported some limitations based on Petitioner's memory issues, but, viewing the record in its entirety, the ALJ concluded that Petitioner's concentration difficulties and poor long-term memory supported a restriction to simple tasks in a setting without strict production quotas. (A.R. 34.)

Like his challenges to the ALJ's treatment of Dr. Lawler's and Dr. Ledakis' opinions, Petitioner argues that the ALJ erred in her consideration of Dr. Lazarus' opinion because the opinion was purportedly supported by objective evidence and explanations and was consistent with the other evidence of record. Petitioner contends that Dr. Lazarus' examination findings were not "generally normal" and that the ALJ ignored Dr. Lazarus' opinion that "vocational rehabilitation was problematic due to the cognitive sequelae from Petitioner's surgery." (Pl.'s Br. at 11.)

The Court finds no error with respect to the ALJ's evaluation of Dr. Lazarus' opinion. The ALJ extensively discussed Dr. Lazarus' findings, accepting some and rejecting others. Petitioner disagrees with the ALJ's assessment that Dr. Lazarus' findings were "generally normal," but Dr. Lazarus' observations included that Petitioner was "cooperative and generally friendly," his social skills were "appropriate," his gait and posture were normal, his motor behavior was unremarkable, his eye contact was appropriate, his speech was fluent, his thought processes were coherent and logical, his affect was full and appropriate to speech and thought content, he was alert and oriented in all spheres, and he was able to perform simplistic mental calculations and his insight and judgment were intact. (A.R. 628.) While Dr. Lazarus also observed that Petitioner was noted to have some word finding difficulties, and his memory skills were "moderately" limited, Dr. Lazarus concluded that Petitioner was "estimated to be functioning in the average range." (*Id.*) Thus, the ALJ's assessment of "generally normal" findings by Dr. Lazarus is supported by substantial

evidence. The ALJ also addressed the consistency of Dr. Lazarus' finding with the other testing in the record, which supported a finding of that Petitioner had "concentration difficulties and reduced long-term memory." (A.R. 35.) The ALJ incorporated these findings into the RFC, concluding that they supported restrictions to simple tasks without production quotas. (*Id.*) Accordingly, the Court finds no basis to disturb the ALJ's findings based on her evaluation of Dr. Lazarus' consultative examination.

**D. The RFC Includes All Credibly Established Limitations**

The ALJ is exclusively responsible for determining the RFC, by considering the medical and other evidence under the agency's framework. The ALJ is under no obligation to adopt the functional restrictions identified by Petitioner's medical providers. *See Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties.").

The RFC represents "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). As outlined in SSR 96-8, an RFC assesses "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." In determining the RFC, the ALJ considers "all of the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1545(a)(3). However, the ALJ need not incorporate limitations that are not credibly established. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). To that end, the ALJ may discount a claimant's subjective complaints if they are inconsistent with the evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999); *see also* 20 C.F.R. § 404.1529(c). At bottom, "so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review[,]'" a reviewing court will not disturb the

ALJ's RFC findings. *Tompkins v. Astrue*, No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones*, 364 F.3d at 505).

Petitioner contends that the RFC failed to include all of Petitioner's credibly established limitations, including the ability to remember and carry out short and simple instructions. However, the Court finds no merit to Petitioner's argument that the RFC was deficient.

The ALJ reviewed all of the evidence related to Petitioner's mental limitations but, as already discussed, ultimately determined that the medical evidence supported no greater limitations than those included in the RFC. The Court finds no error in the ALJ's assessment of these cognitive limitations. Petitioner asserts that the ALJ should have accepted the extreme and marked limitations found by Dr. Lawler, Dr. Ledakis and/or Dr. Lazarus, but the Court has already concluded that the ALJ's rejection of these providers' opinions was appropriate.

The ALJ's decision reflects consideration of an RFC based on the consistent reports of mild to moderate functional limitations, Petitioner's use of coping strategies to mitigate the effects of his memory impairment, and his ability to engage in activities of daily living, including that he does not need reminders to take care of his personal needs, volunteers, manages his own healthcare appointments, shops for necessities, prepares simple meals, and performs some household chores in maintaining his home, including cleaning and doing laundry, as reflected in the record. The ALJ acknowledged that "none of the claimant's activities of daily living are dispositive," but found that "taken together and considered in conjunction with the medical evidence of record, they suggest that the claimant can perform work within the above parameters on a sustained and continuous basis." (A.R. 37.) Petitioner may disagree with the conclusion the ALJ drew, but the Court finds that the RFC is supported by substantial evidence.

### E. The Jobs Identified by the ALJ At Step 5

Finally, Petitioner argues that even if the RFC is appropriate, the jobs cited by the VE could not be performed with the limitations of Petitioner's RFC. Petitioner specifically argues in this regard that the proposed jobs all have a Reasoning Level of 2, which requires the worker to follow "detailed" instructions and exceeds the capacity to follow "simple" instructions as provided in Petitioner's RFC. In response, the Commissioner points to two cases, *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) and *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014), in which the Third Circuit held that an RFC containing a limitation to simple, routine, and repetitive work does not conflict with occupations that involve working at Reasoning Level 2. In reply, Petitioner notes that the cases cited by Defendant discuss an ability to perform simple, routine and repetitive work and not an ability to follow simple instructions.

The DOT defines Reasoning Level 2 as an ability to carry out "detailed but uninvolved written or oral instructions." DOT, Appendix C, 1991 WL 688702. By contrast, the DOT defines Reasoning Level 1 as an ability to carry out "simple one- or two-step instructions." *Id.* The issue here is whether an ability to follow "simple instructions" can include jobs that require an individual to perform "detailed but uninvolved written or oral instructions" as provided in Reasoning Level 2. The Fourth Circuit has noted that "a short and simple instructions restriction shares the word 'simple' with the Level 1 definition but could permit instructions of more than two steps" but "[o]n the other hand, it is not entirely clear to [the court] that a person limited to short and simple instructions can also carry out Level 2 jobs that include 'detailed but uninvolved' instructions." *Keller v. Berryhill*, 754 F. App'x 193, 198 (4th Cir. 2018).

In *Money v. Barnhart*, the Third Circuit held that a job with a Reasoning Level 2 does not "contradict the mandate that [the claimant's] *work* be simple, routine and repetitive." 91 F. App'x

at 215 (emphasis added). In *Zirnsak v. Colvin*, the Third Circuit noted that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." 777 F.3d at 618. As previously noted, these cases address an ability to perform simple "work" and do not specifically address an ability to perform simple "instructions." However, in a different context, the Third Circuit has stated that "[a] limitation to 'simple tasks' is fundamentally the same as one 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'" *Hess*, 931 F.3d at 210.

Other courts within the Third Circuit have held that an RFC limited to simple instructions is not inconsistent with Reasoning Level 2. For example, in *Antonio R. v. Comm'r of Soc. Sec.*, No. 25-01980, 2026 WL 810050, at *11 (D.N.J. Mar. 24, 2026), the court rejected the argument that Petitioner makes here, *i.e.*, that *Money* and *Zirnsak* are distinguishable because they considered limitations to "simple tasks" rather than "simple instructions." In *Antonio R.*, the court referred to this as merely a "semantic distinction" and found that "reasoning level 2 jobs do not inherently conflict with a limitation to simple instructions or simple tasks." *Id.* at *12.[5] *See also Dance v. Comm'r of Soc. Sec.*, No. 20-3141, 2021 WL 3144696, at *9 (D.N.J. July 26, 2021) (rejecting argument that plaintiff could perform jobs having a Reasoning Level of 2 when plaintiff's RFC limited plaintiff to jobs with only "simple tasks and instructions"); *Cowher v. O'Malley*, No. 21-178, 2024 WL 3161865, at *7 (W.D. Pa. June 24, 2024) ("courts generally find that a limitation to

[5] *But see Radford v. Saul*, No. 18-161, 2019 WL 3729565, at *5 (W.D.N.C. Aug. 7, 2019) ("The Court finds that a meaningful difference exists between a limitation to *perform* only simple, routine, repetitive tasks . . . and a limitation to only receive and follow short, simple instructions[.] The first limitation accounts for a claimant's ability to *perform* certain job tasks while the second limitation accounts for a claimant's ability to *comprehend* job tasks[.]"), *aff'd*, 807 F. App'x 276 (4th Cir. 2020).

'simple instructions,' like the one included in Cowher's RFC, is consistent with jobs at both R1 and R2").

The Court recognizes that there are cases in which courts have held that an RFC limited to simple instructions may be inconsistent with Reasoning Level 2. *See, e.g.*, *Susan A. v. Comm'r of Soc. Sec.*, No. 21-07949 (KM), 2022 WL 2304666, at *8 (D.N.J. June 27, 2022) (remanding where RFC limited claimant to "understand, remember, and carry out simple instructions with only occasional changes to essential job functions and . . . make simple work-related decisions" and jobs identified by VE all had Reasoning Level 2). Indeed, the Eighth Circuit has noted that "a job rated reasoning level one requires the ability to understand and carry out simple instructions, whereas a job rated reasoning level two requires the ability to understand and carry out detailed instructions." *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997).

Here, the RFC was not limited to simple "tasks;" the RFC rather limited Petitioner to an ability to follow simple "instructions." Nonetheless, as previously discussed, the Third Circuit concluded in *Hess* that a limitation to simple "tasks" is equivalent to a limitation to simple "instructions," and concluded in *Money* that simple "work" may fall within Reasoning Level 2. The Court finds no meaningful distinction between simple "work" and simple "tasks." Therefore, reading *Hess* and *Money* together compels the conclusion that jobs with Reasoning Level of 2 do not inherently conflict with a limitation to simple instructions.

In summary, the RFC here limited Petitioner to simple instructions, simple work-related decisions, and only occasional changes in a routine setting. The VE identified jobs that require Reasoning Level 2. No apparent unresolved conflict exists between those jobs and the limitations in the RFC. Moreover, because the ALJ identified at least one job that existed in significant numbers which Petitioner could perform, her determination is supported by substantial evidence.

## III. CONCLUSION

In conclusion, the final decision of the Commissioner is **AFFIRMED**.

## ORDER

For the reasons set forth herein, and for good cause shown,

**IT IS** this **14th** day of **October 2026** hereby,

**ORDERED** that the Commissioner's decision is **AFFIRMED**.

KAREN M. WILLIAMS
United States District Judge